BOOTH *v.* BRIGGS MANUFACTURING CO.

MASTER AND SERVANT—CONTRACT OF HIRING—EVIDENCE—DIRECTED
VERDICT.

   In an action for the balance due on a salary, where
   plaintiff's claim that he was to have a drawing allow-
   ance of a certain sum per month and was to receive the
   balance of his salary at the end of the year was cor-
   roborated by defendant's agent who hired him, the trial
   court was not in error in refusing to submit to the jury
   the question as to whether certain rate slips and checks
   controverted plaintiff's claim, where it was undisputed
   that they showed his drawing allowance and not his yearly
   salary, and a verdict in his favor was properly directed.[1]

Error to Wayne; Carr (Leland W.), J., presiding.
Submitted January 8, 1925. (Docket No. 52.) De-
cided May 14, 1925.

Assumpsit by Carl Vern Booth against the Briggs
Manufacturing Company for a balance due on a
contract of employment. Judgment for plaintiff on
a directed verdict. Defendant brings error. Af-
firmed.

*Connolly & Henderson,* for appellant.

*Davidow & Davidow,* for appellee.

McDONALD, C. J. The purpose of this action is to
recover a balance due for salary which the plaintiff
claims amounts to $3,700. The material facts con-
stituting the plaintiff's case are well stated in his
counsel's brief as follows:

   "The testimony stands undisputed that George May-

---

[1]Master and Servant, 26 Cyc. p. 1062 (Anno).

hew was a high-salaried man in the automobile body building industry and that he had had charge of several plants in the production of automobile bodies.    Walter O. Briggs, as president of the Briggs Manufacturing Company, which was engaged in the manufacture of automobile bodies, employed George Mayhew to be exclusively in charge of the Harper and Elliott avenue plants of the Briggs Manufacturing Company, and he was authorized to employ such men at such rates as would seem right and proper to him.    *    *    *

"The claim of the plaintiff is that he was employed by the Briggs Manufacturing Company, the defendant, through its duly authorized agent, George Mayhew, to work for a period of one year commencing with June 1, 1922, and ending with May 31, 1923, as assistant production manager in charge of the frame and metal department for the sum of $7,500 for the year, and that he was to receive a drawing account of $300 per month (which was afterwards raised to $350) and the balance of the salary at the end of the year.    Mr. Booth accepted the terms of this agreement and reported for work on the 1st day of June, 1922, at which time he met Mr. Briggs, president of the defendant company, and at which time Mr. Briggs confirmed the agreement made with the Briggs Manufacturing Company through Mr. Mayhew.    *    *    *

"Before the year was up, Mr. Mayhew severed his connection with the Briggs Manufacturing Company because he was unwilling to continue with them for longer than his contract of employment due to the condition of his health.    Mr. Mayhew sought to see Mr. Briggs in person and remind him of the situation in reference to men like the plaintiff and the sums of money due them upon the expiration of the year.    While Mr. Briggs promised Mr. Mayhew an interview to take care of these matters, Mr. Mayhew was never given a chance to see Mr. Briggs, with the result that at the expiration of the year when the plaintiff demanded the balance of his salary in compliance with the terms of the contract of employment, he was requested to wait upon Mr. Pague, the successor to Mr. Mayhew.    Mr. Booth, upon receiving payment of his last drawing account, served notice upon the Briggs Manufacturing Company that he

claimed the balance of his salary besides the drawing account.

"Mr. Mayhew, in explaining the manner in which payments of salaries were made to employees of official position whom he hired himself, said that in fixing the salary with employees of official capacity he always had followed the policy of giving a drawing account as part of the salary and keeping the rest to be paid upon the expiration of the year. He stated that he found this to be very efficient in encouraging men to remain with him for the entire period of employment so that they would not be tempted to leave sooner and go to work for others.

"Walter O. Briggs asked Mr. Mayhew to keep secret from the old employees of the defendant company the actual amounts to be paid the men whom Mr. Mayhew was bringing over to work for him in the employ of the Briggs Manufacturing Company, the reason being that dissatisfaction would be created by the old men knowing that the newcomers were to receive a higher salary."

It is the defendant's claim that plaintiff's salary was fully paid in accordance with certain rate slips filed by Mr. Mayhew with its treasurer, and that it is not now indebted to the plaintiff in any sum whatever. Upon the close of the proofs the court directed a verdict for the plaintiff in the sum of $3,803.55. Judgment was entered on the verdict and the defendant brings error.

The only question involved is the action of the court in directing a verdict for the plaintiff. It was the opinion of the circuit judge that the essential facts of the plaintiff's case were undisputed. The defendant insists that the court was in error; that there were in evidence certain so-called rate slips and checks which were contradictory of the plaintiff's claims, and which furnished sufficient evidence to take the question in issue to the jury. These rate slips were in the following form:

"TO THE TIMEKEEPER                    June 1 1922
                CHANGE RATE OF
NAME      V. BOOTH
DEPT.      FRAME              POSITION  Superintendent
FROM————PER HOUR TO          300.00 per mo.
G. MAYHEW
                        APPROVED
                                HARPER PLANT."

Of this rate slip Mr. Mayhew testifies on cross-examination:

"*Q.* That is the written information that you gave to the assistant treasurer of the company as to what Mr. Booth was to receive isn't it?

"*A.* Per month, yes, that was the drawing allowance that was understood by Mr. Briggs."

This slip was made out on the regular printed form used in the factory and was required to be filed with the treasurer so that he might be able to fix the amount in the pay checks.    These checks were also the regular form checks used in the factory and all of them contained a payment in full statement.

The plaintiff received his pay semi-monthly with the checks of this kind.    He knew what they contained. But the undisputed testimony is that they were made to show his drawing allowance and not his actual salary, and that this was done by agreement with Mr. Briggs and at his request, so that other officials and employees should not know the real salary of the men employed by Mr. Mayhew.    That is the testimony of Mr. Mayhew, and no one contradicts him.    The only other man having knowledge of these facts was Mr. Briggs, and he did not see fit to offer himself as a witness.    On the question as to whether rate slips and checks were evidence requiring the court to submit the case to the jury, the controlling fact is that they are not inconsistent with the plaintiff's claim or contradictory of it, because by evidence that is undisputed they do not show the

actual salary that the plaintiff was entitled to under the agreement by which he was employed. Mr. Mayhew was a disinterested witness. He was in no way discredited or impeached. His testimony throughout was not contradicted by any circumstance, inconsistency or improbability, or by the oral testimony of other witnesses. It covered every essential element of the plaintiff's case and the court would not have been justified in permitting the jury to disregard it. He was right in directing the verdict.

The judgment is affirmed, with costs to the plaintiff.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.